UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KENT D WHEATFALL, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. H-07-1937 |
| § | |
| JOHN E POTTER, § | |
| § | |
| Defendant. § | |

**OPINION AND ORDER**

Pending before the Court is Defendant John E. Potter, Postmaster General of the United States Postal Service's ("USPS") motion for summary judgment (Doc. 21), as well as Plaintiff Kent D. Wheatfall's ("Wheatfall") response (Doc. 32), and USPS's reply (Doc. 34). Upon review and consideration of this motion, the response and reply thereto, the relevant legal authority, and for the reasons explained below, the Court finds that Defendant's motion should be granted.

I. Background and Relevant Facts

This is an employment discrimination case. Plaintiff Wheatfall is a homosexual African-American man. (Doc. 22, Exh. A at 17:8–15; Doc. 1 at 3; Doc. 27 at ¶ 2 a–c.) Wheatfall alleges sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and disability discrimination under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701, *et seq.* Wheatfall also asserts claims for denial of workers' compensation benefits under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.*, and intentional infliction of emotional distress.

Wheatfall started his career as a mail carrier in 1985 and is still employed by USPS.

(Doc. 27 at ¶ 2; Doc. 22, Exh. A at 149:23–150:1.)  In 1999, Wheatfall was injured, and as a result, has a diminished ability to lift heavy objects and suffers from a limited range of motion in his neck and shoulders.  (Doc. 27 at ¶ 2 u, ¶ 20.)  Due to his injury, Wheatfall could request assistance when loading and unloading mail trucks.  (*Id.* at ¶ 2 v.)  Wheatfall contends he usually did not receive assistance.  (*Id.*)

The instant complaint covers Wheatfall's employment at USPS from May through July 2006.  (Doc. 32 at 1.)  In May 2006, Wheatfall was a "limited duty" employee under the supervision of Cathy Lewis ("Lewis") and, like other limited duty employees, was given work when appropriate work was available.  (Doc. 22, Exh. A at 154:19–25; 159:15–21.)When acceptable work was not available, Wheatfall had the option of moving to another group or not working.  (*Id.* at 159:15–21.)  Despite his physical limitations, Wheatfall alleges that Lewis instructed him to "pull heavy equipment" and work on the mail sorting machines.  (*Id.* at 155:13–15.)  Wheatfall says that when he requested assistance, Lewis offered to get another employee to help him, but no one came.  (*Id.* at 161:21–22.)  Wheatfall also claims that Lewis accused him of "untruths," including that he threatened her life.  (Doc. 27 at ¶ 8.)

Wheatfall further alleges that Ed Joseph ("Joseph"), a manager from the security department, would come into his office and initiate conversations with sexual overtones.  (Doc. 27 at ¶ 7.)  Joseph once invited Wheatfall to his ranch "to ride [his] horse until [Wheatfall] was sore."  (Doc. 22, Exh. A at 148:22–24.)  Wheatfall thought that Joseph wanted to have sex with him.  (*Id.* at 145:16–21.)  Joseph states he is "exclusively heterosexual" and denies making comments about Wheatfall's sexual orientation.  (*Id.*, Exh. T at 1.)

Soon thereafter, on July 3, 2006, Wheatfall transferred to a job in the security department under Joseph's supervision.  (*Id.*, Exh. D at 18.)  On July 21, 2006, when Wheatfall requested

Joseph's assistance at work, Joseph responded by yelling, "You motherfucking faggot. Don't ask me for this bullshit… I'm fixing to go home." (Doc. 22, Exh. A at 61:2–22.) Fernandral Hennington, a coworker who witnessed the outburst, characterized Joseph's behavior as "disrespectful" and "distasteful." (Doc. 27, Exh. A.) Wheatfall says he was humiliated in front of customers and alleges that the incident aggravated his Herpes disease. (*Id.* at ¶¶ 15–18.) Wheatfall filed a workers' compensation claim based on this incident. (Doc. 22, Exh. K.)

After the July 21, 2006 incident, Wheatfall became severely depressed and had to be hospitalized on suicide watch. (Doc. 27 at ¶¶ 15–18) On July 25, 2006, Wheatfall's physician, Jamie Ganc, notified USPS of Wheatfall's hospitalization and suicidal thoughts. (*Id.*, Exh. H.) USPS initiated a threat assessment review out of concern for Wheatfall's safety and that of other employees. (*Id.*, Exh. N.) USPS did not permit Wheatfall to return to work until a Fitness for Duty ("FFD") exam could be completed. At the first FFD exam, on August 16, 2006, Wheatfall refused to sign the required release. (Doc. 22, Exh. P.) USPS modified the release before Wheatfall's subsequent evaluation. (Doc. 22, Exh. Q.)

On August 21, 2006, USPS sent Wheatfall a letter advising him that as of September 4, 2006, he would no longer receive pay during his absence from work. (Doc. 22, Exh. J.) The letter informed him that if his disability continued beyond September 4, 2006, he might be eligible for workers' compensation. (*Id.*)

While still on leave, on October 13, 2006, Wheatfall filed an EEO complaint accusing Joseph of discrimination and of creating a hostile work environment "based on gender (male) and Sex (sexual orientation)." (Doc. 22, Exh. B) (parenthesis in original.) On November 9, 2006, USPS cleared Wheatfall to return to work. (Doc. 22, Exh. S.) From September 4 until November 9, 2006, Wheatfall was on "non-pay status." (Doc. 22, Exh. A at 92:7–12.) On

November 27, 2006, the USPS Acting Manager for Health and Resource Management, Robert Sutkoff ("Sutkoff"), informed Wheatfall that the U.S. Department of Labor had denied his July 21, 2006 traumatic injury claim arising from his Herpes flare-up, depression, and hospitalization, because they were unrelated to work events. (Doc. 22, Exh. K.) Sutkoff also advised Wheatfall of the process for reimbursing USPS for the paid leave he had received from July 22 to September 4, 2006. (Doc. 22, Exh. L.)

On April 25, 2007, USPS issued its final agency decision that Wheatfall had failed to prove discrimination. (Doc. 22, Exh. D.) The decision informed Wheatfall of his right to file a lawsuit. (*Id.* at 12–13.) On June 11, 2007, Wheatfall filed the instant complaint alleging sex-based, disability-based, and reprisal-based discrimination. (Doc. 1 at 3.) Wheatfall contends that Joseph's comments during the July 21, 2006 incident were directed against him because he is gay and that harassment and discrimination against him were predicated on his effeminate nature, disability, and in retaliation for filing multiple EEO complaints.[1] (Doc. 22, Exh. A at 62:7–8; Doc. 27 at ¶ 35.) Joseph denies discriminating or retaliating against Wheatfall based on any EEO complaint and states he was unaware of the complaints until the spring of 2007, when Wheatfall was no longer under his supervision. (Doc. 22, Exh. T.)

USPS moves for summary judgment pursuant to Fed. R. Civ. P. 56(c), asserting that Wheatfall's claim of sex discrimination actually relates to his sexual orientation, which is not protected under Title VII. (Doc. 21 at 23.) USPS further argues that Wheatfall's related tort claims are preempted by Title VII, since they are based on the same facts as his discrimination claims. (*Id.* at 20–21.)

---

[1] Wheatfall has filed twenty claims for workers' compensation and sixteen EEO complaints. (Doc. 22, Exh. E.)

II. Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the movant fails to meet its initial burden, the motion must be denied, irrespective of the adequacy of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in its favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor" (emphasis in original)).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  Instead, the nonmoving party must produce evidence upon which a jury could reasonably base a verdict in its favor.  *Anderson*, 477 U.S. at 248; *see also*, *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).  To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial."  *Webb v. Cardiothoracic Surgery Assoc. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).  Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence.  *Morris v. Covan World Wide Moving, Inc*., 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Tex. Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).

The nonmovant cannot discharge its burden by offering vague allegations and legal conclusions.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992).  Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment.  *Ragas v. Tenn. Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).  Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party.  *Matsushita*, 475 U.S. at 587–88; *see also, Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co*., 336 F.3d 410, 412 (5th Cir. 2003).  The party opposing a motion for summary judgment does not need to present additional evidence, but may identify

genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). The nonmoving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

III.  Discussion

    A.  Title VII Claims

It is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII's prohibition against harassment based on sex does not extend to discrimination based on sexual orientation. *Blum v. Gulf Oil Corp.,* 597 F.2d 936, 938 (5th Cir. 1979); *Dawson v. Bumble & Bumble*, 398 F.3d 211, 218 (2d Cir. 2005). Wheatfall alleges that he was discriminated against for being a "gay American." (Doc. 22, Exh. A at 17:8–15.)

> Q: When you talk about your discrimination based upon gender, what we're really talking about is your sexual orientation. Correct?
>
> A: That's correct.

(*Id.* at 42:13–16.)

To the extent that Wheatfall's discrimination claim is based on his sexual orientation, he fails to state a claim under Title VII. Nonetheless, Title VII protects men from same-sex sexual harassment when they are harassed because of their sex. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998). Under *Oncale*, a plaintiff can show that an incident of same-sex harassment constitutes sex discrimination by (1) showing via credible evidence that the harasser

was homosexual; (2) showing that the harasser was motivated by a general hostility to the presence of one gender in the workplace; or (3) offering direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex environment. *Id.*

Evidence that the harasser "intended to have some kind of sexual contact with the plaintiff rather than merely to humiliate him for reasons unrelated to sexual interest," or "proof that the harasser made same-sex sexual advances to others, especially other employees" can satisfy the first *Oncale* test. *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 480 (5th Cir. 2002). Joseph denies that he is homosexual and Wheatfall concedes that he does not know whether Joseph is gay. (Doc. 22, Exh. T; Exh. A at 148:22–23.)

> Q: Is Mr. Joseph a gay American?
>
> A: I really don't know, but he made a gay gesture towards me one day in the parking lot with Melvin Smith – I mean, Speldin Cooper, that I should come out to his ranch and ride his pp, ride on top of his pp, his horse, and they laughed about it, and I didn't think that was – and I didn't think that kind of joking was something you joke about.
>
> Q: But this was more akin to gay bashing, was it not?
>
> A: Ma'am.
>
> Q: It was more a gay bashing, was it not?
>
> A: However you want to call it. Gay bashing, to me it was emotional abuse.
>
> Q: And they were making fun of you because you were a gay American?
>
> A: Yes, ma'am.
>
> Q: You didn't take it to mean that they really wanted to go have sex with you, did you?
>
> A: The tone and the gesture that they used implied that they did.
>
> Q: As we're sitting here today, do you believe Mr. Joseph wants to have sex with you?

        A:  Uh-huh.

(Doc. 22, Exh. A at 148:22–149:22.)

Joseph's crude statements, however distasteful and inappropriate, do not rise to the level of sexual harassment. *See Grimes*, 102 F.3d at 139–40; *see also*, *English v. Pohanka of Chantilly, Inc.*, 190 F. Supp. 2d 833, 846 (E.D. Va. 2002) (finding summary judgment justified where plaintiff's sole proof of the harasser's homosexuality was his victim's subjective belief that the harasser was gay). Wheatfall interprets Joseph's horse riding remark as a sexual invitation, but does not offer any evidence that Joseph propositioned other male employees. Moreover, Wheatfall concedes that Joseph's comments were intended to make fun of him. (Doc. 22, Exh. A at 149:15.) Intent to humiliate is not proof of Joseph's desire to have sex with Wheatfall. *See*, *La Day*, 302 F.3d at 480.

Under the second *Oncale* test, the critical issue is whether the harasser "is motivated by general hostility" to the presence of one gender in the workplace. *Oncale*, 523 U.S. at 80. Wheatfall offers no evidence that Joseph treated men with any greater hostility than women.

The third *Oncale* test allows the victim to "offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id.* at 80–81. Wheatfall's deposition does not indicate that Joseph treated other men the way he treated Wheatfall or that he gave preferential treatment to either men or women in the workplace.

        A:  Because the treatment that—he spoke with [women] in a nice tone, but he didn't do me like that. Any time that I had a problem, even with my leave slip, he would fuss and yell and blah, blah this and blah, blah that.

        Q:  And that was just you—

        A:  Yes.

        Q:  —that he treated in this fashion?

> A: Yes. Yes.
>
> Q: Let me finish. It was just you that he treated in this fashion; is that correct?
>
> A: Yes, ma'am.
>
> Q: He didn't treat the other men like that, did he?
>
> A: Not to my knowledge.
>
> Q: And he didn't treat the other women like that, did he?
>
> A: Yes—no, he did not.

(Doc. 22, Exh. A at 140:13–141:5.) Wheatfall therefore fails to show that he was harassed because of his sex.

Retaliation-based discrimination requires that the plaintiff (1) participated in a protected activity under Title VII; (2) suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Pierce v. Tex. Dept. of Criminal Justice*, 37 F.3d 1146, 1151 (5th Cir. 1994). Filing EEO complaints is a protected activity under Title VII. *Casarez v. Burlington N./Santa Fe Co.*, 193 F.3d 334, 339 (5th Cir. 1999).

Wheatfall claims Joseph knew of his prior EEO complaints because he could access USPS databases with this information. (Doc. 22, Exh. A at 14:24–15:3.) Joseph denies knowledge of Wheatfall's history of EEO complaints and states that he did not become aware of the instant complaint until early 2007, when Wheatfall was no longer under his supervision. (*Id.*) That Joseph had access to this information does not impute knowledge. *See Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 507 (5th Cir. 2002) (affirming summary judgment on the plaintiff's Title VII retaliation claim where there was little evidence to show that the defendant

"was even aware" of the plaintiff's activity "and even less to show that he took certain actions because of [the plaintiff's] protected activity"); *Casarez*, 193 F.3d at 338–39 (affirming summary judgment in favor of the employer in a retaliation case because the employer was not aware of the plaintiff's discrimination complaint when making the employment decision that the plaintiff claimed was retaliatory). Finally, Wheatfall fails to present evidence of a causal connection between his EEO complaints and an adverse employment action. *See McDaniel v. Temple Indep. School Dist.*, 779 F.2d 1340, 1346 (5th Cir. 1985).

Wheatfall next asserts that he was subject to a hostile work environment at USPS. This claim requires proof that (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) such harassment was based on his protected status; and (4) the harassment complained of affected a term, condition, or privilege of employment. *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). If the challenged conduct creates an environment that a reasonable person would find hostile or abusive, then the conduct is sufficiently severe to alter conditions of the victim's employment and establish an abusive working environment. *See Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996). The court may consider the frequency of alleged harassing conduct, its severity, the degree to which it is physically threatening or humiliating, and the degree to which it unreasonably interferes with an employee's work. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The plaintiff must demonstrate that "the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex." *Oncale*, 523 U.S. at 81.

On July 21, 2006, Joseph called Wheatfall a "motherfucking faggot." (Doc. 22, Exh. A. at 61:2–22.) This slur refers to Wheatfall's homosexuality, which is not a protected class under Title VII. *Blum,* 597 F.2d at 938; *see also La Day*, 302 F.3d at 478 (holding that even severe or

pervasive harassment might be excluded from Title VII coverage because it was not discriminatory on the basis of sex). Because the alleged harassment was unrelated to a protected class, Wheatfall's hostile work environment claim fails as a matter of law.

### B. Disability Discrimination

Wheatfall's claim of discrimination based on physical disability falls under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq*. Discrimination under the Rehabilitation Act is evaluated by the standards applying the Americans with Disabilities Act. *Soledad*, 304 F.3d at 503. Accordingly, Wheatfall must show that he (1) is disabled or regarded as disabled; (2) is qualified for the position; (3) suffered an adverse employment action on account of his disability or perceived disability; and (4) was replaced by or treated less favorably than non-disabled employees. *Bauer v. Albermarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001); *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003). "An individual with a disability is any person who (1) has a physical or mental impairment which 'substantially limits one or more of such person's major life activities'; (2) has a 'record' of such an impairment; or (3) is 'regarded' as having such an impairment." *Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir. 1997) (citing 29 U.S.C. § 706(8)(B)). Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 614 (5th Cir. 2009) (citing 29 C.F.R. § 1630.2(i)).

"Further, the limitation on the major life activity must be 'substantial'; to be substantially limited means to be unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it." *Id.* at 620.

Courts consider: "(i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.* (citing 29 C.F.R. § 1630.2(j)). "The inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working." 29 U.S.C. § 1630.2(j)(3)(i). An impairment does not rise to the level of a work disability unless a person is precluded "from a class of jobs or a broad range of jobs." *Dupre v. Charter Behavioral Health Sys.*, 242 F.3d 610, 614 (5th Cir. 2001); *see also Moreno v. Brownlee*, 85 F. App'x 23, 27–28 (5th Cir. 2004) (employee failed to establish *prima facie* case of disability discrimination where evidence showed his carpal tunnel syndrome had precluded him from performing one particular job, which was "not enough to constitute a substantial limitation in the major life activity of working").

Wheatfall's impairments prevent him from lifting more than 20 pounds, limit his ability to climb, stoop, bend, and prevent him for standing for long periods of time. (Doc. 22, Exh. A at 150:15; Doc. 27 at ¶ 20.) According to Wheatfall, he was able to be productive while working for Lewis in 2006. (Doc. 27 at ¶ 14.) Wheatfall continues to work for USPS in the transportation department where he states he can perform his various job requirements. (Doc. 22, Exh. A at 150:4–13.) When asked in his deposition to explain his alleged disability, Wheatfall responds, "Yes, I have a disability. I'm a disabled person. It's just that simple." (*Id.* at 19:17–20.) Wheatfall's impairments do not limit his ability to perform a broad range of jobs and therefore do not rise to the level of a disability under the Rehabilitation Act.

Wheatfall also cannot show he has a record of disability or is regarded as being disabled. "A 'record' of impairment means that the claimant has a history of, or has been misclassified as having, a mental or physical impairment that 'substantially limits one or more major life

activities.'" *Hileman*, 115 F.3d at 353 (citing 29 U.S.C. § 706(8)(B)). Wheatfall fails to establish that his record of impairments limited his ability to work. *See EEOC v. R.J. Gallagher Co.*, 181 F.3d 645, 655 (5th Cir. 1999); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 490 (1999).

> A person is "regarded" as having an impairment if he:
>
>> (1) has a physical or mental impairment that does not substantially limit a major life activity, but that is treated by a recipient as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) does not have a qualifying physical or mental impairment (enumerated in 45 C.F.R. § 84.3(j)(2)(i) (1992)) but is treated as having such an impairment.

*Hileman*, 115 F.3d at 353. To show that he was regarded as disabled, Wheatfall would have to show that USPS perceived him as substantially limited from a broad range of jobs. *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir. 1995). Wheatfall brings no evidence that Joseph or his other supervisors at USPS ever perceived him as substantially limited from a broad range of jobs.

C. Tort Claims

Wheatfall's tort claims for intentional infliction of emotional distress and negligent hiring are preempted by Title VII, which provides the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 821 (1976). When a complaint relies on the same facts to establish a Title VII claim and a non-Title VII claim, the non-Title VII claim is "not sufficiently distinct to avoid" preemption. *Rowe v. Sullivan*, 976 F.2d 186, 189 (5th Cir. 1992); *see*, *Jackson v. Widnall*, 99 F.3d 710, 716 (5th Cir. 1996); *Watkins v. Tex. Dept. of Crim. Justice*, 269 Fed. Appx. 457, 464–65 (5th Cir. 2008). A plaintiff "cannot avoid Title VII preemption by picking

and choosing which of her factual allegations she wishes to allocate to her Title VII claims and her independent torts claims." *Pfau v. Reed*, 125 F.3d 927, 933 (5th Cir. 1997), *rev'd on other grounds*, 525 U.S. 801 (1998). Wheatfall's tort claims are preempted.

    D. Remaining Claims

Finally, Wheatfall claims that he was wrongfully required to undergo a psychiatric FFD examination and improperly denied workers' compensation. "Title VII requires employees to exhaust their administrative remedies before seeking judicial relief." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *Id.* The FFD claim must be dismissed because Wheatfall failed to raise it in his EEO complaint. (Doc. 27, Exh. B and D.)

Wheatfall's workers' compensation claim is governed by FECA, 5 U.S.C. § 8101, *et seq*. "FECA is the exclusive remedy for work-related injuries sustained by federal employees." *Votteler v. United* States, 904 F.2d 128, 130 (2d Cir. 1990) (citing 5 U.S.C. § 8116(c) (2000); *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190 (1983)). The Secretary of Labor's decision is conclusive and not subject to review by this Court. *Benton v. United* States, 960 F.2d 19, 22 (5th Cir. 1992); *Schwartz v. U.S. Dept. of Labor*, 161 F. App'x 357, 358 (5th Cir. 2005); 5 U.S.C. § 8128(b).[2]

IV. Conclusion

Accordingly, the Court hereby ORDERS that Defendant John E. Potter, USPS Postmaster General's motion for summary judgment (Doc. 21) is GRANTED.

---

[2] Section 812(b) provides that: The action of the Secretary or his designee in allowing or denying a payment under this subchapter is (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

SIGNED at Houston, Texas, this 19th day of July, 2010.

*(signature)*

MELINDA HARMON
UNITED STATES DISTRICT JUDGE